**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| COMPUTERSHARE TRUST COMPANY, N.A., AS TRUSTEE FOR THE BENEFIT OF THE REGISTERED HOLDERS OF BANK5 2023-5YR1, COMMERCIAL MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2023-5YR1,<br><br>Plaintiff,<br><br>vs.<br><br>MIMOCT LLC, THE METROPOLITAN ST. LOUIS SEWER DISTRICT, SRS DISTRIBUTION, INC. and "JOHN DOE" NOS. 1-25,<br><br>Defendants.<br><br>The Names of the "John Doe" Defendants Being Fictitious and Unknown to Plaintiff, the Persons and Entities Intended Being Those Who Have Possessory Liens or Other Interests in, the Premises Herein Described. | Civil Action No.<br><br><br><br>**VERIFIED COMPLAINT** |

Computershare Trust Company, N.A., as Trustee for the benefit of the registered holders of BANK5 2023-5YR1, Commercial Mortgage Pass-Through Certificates, Series 2023-5YR1 ("Plaintiff" or "Trust" or "Lender") by and through its attorneys, Perkins Coie LLP, for its Verified Complaint (the "Complaint") against the defendants, respectfully alleges as follows:

## THE PARTIES

1. Computershare Trust Company, N.A., as Trustee for the benefit of the registered holders of BANK5 2023-5YR1, Commercial Mortgage Pass-Through Certificates, Series 2023-5YR1 is, and at all relevant times hereinafter mentioned was, a national association with its main

office location in Canton, Massachusetts. As the trustee actively managing the trust, Plaintiff is a citizen of Massachusetts.

2. Plaintiff is the duly appointed and presently serving Trustee under the trust created under the pooling and servicing agreement governing the acquisition and administration of a pool of mortgage loans, of which each loan that is the subject of this action is one.

3. Plaintiff, as the lawful holder and owner of the note, mortgage and security interest being foreclosed therein, brings this action.

4. Upon information and belief, defendant MIMOCT LLC ("Borrower") is, and at all relevant times hereinafter mentioned was, a limited liability company formed and existing under and by virtue of the laws of the State of Delaware, having a principal place of business at c/o Leeton Real Estate Inc., 455 Tarrytown Road, #1526, White Plains, New York 10607. Upon information and belief, the members of Borrower are citizens of New York and New Jersey.

5. Borrower is, and at all relevant times hereinafter mentioned was, the owner of certain real property located at the following (and as more specifically described in Schedule A annexed hereto, together with the buildings, improvements, fixtures, machinery, equipment, personalty and other rights or interests of any kind or nature owned or held by it (collectively, the "Mortgaged Properties"):

- Valley Center, 3343 Tittabawassee Road, Saginaw, Michigan 48604 and 3175 Westbay Drive, Saginaw, Michigan 48604 in the County of Saginaw, State of Michigan, identified by Tax ID Parcels 23-12-4-03-1054-000; 23-12-4-03-1054-003; and 23-12-4-03-1054-005 ("Valley Center Property")

- 200 Great Pond Drive, Windsor, Connecticut 06095 and 999 Great Pond Drive, Windsor, Connecticut 06095 in the County of Hartford, State of Connecticut, identified by Tax ID Parcels 12 143 200G and 12 143 R ("Great Pond Property")

- 11200 West Florissant Avenue, Florissant, Missouri 63033; 11204 West Florissant Avenue, Florissant, Missouri 63033; 11208 West Florissant

Avenue, Florissant, Missouri 63033; and 11298 West Florissant Avenue, Florissant, Missouri 63033 in the County of St. Louis, State of Missouri ("Clocktower Property")

6. Upon information and belief, defendant THE METROPOLITAN ST. LOUIS SEWER DISTRICT ("MSD") is, and at all relevant times hereinafter mentioned was, a municipal corporation and political subdivision of the State of Missouri established under the laws of Missouri with the power to sue and be sued. MSD is made a party defendant as a judgment creditor of the Mortgaged Properties by reason of the judgment(s) described on Schedule B attached hereto. MSD is the holder of a lien(s) on account of those judgment liens, if any, against Borrower, as described on Schedule B, which liens are subject and subordinate to the lien of the mortgages being foreclosed herein. MSD is made a party defendant herein solely for the purpose of foreclosing those liens, if any, against the Mortgaged Properties which accrued, or may accrue, subsequent to the lien of mortgage being foreclose herein by virtue of such judgment liens which are or may be due or which become due to MSD from any owner of record of the Mortgaged Properties.

7. Upon information and belief, defendant SRS DISTRIBUTION, INC. ("SRS") is, and at all relevant times hereinafter mentioned was, a company incorporated and formed under the laws of the State of Delaware, having a principal place of business at 7440 S. State Highway 121, McKinney, Texas 75070. SRS is made a party defendant as a judgment creditor of the Mortgaged Properties by reason of the judgment(s) described on Schedule B attached hereto. SRS is the holder of a lien(s) on account of those judgment liens, if any, against Borrower, as described on Schedule B, which liens are subject and subordinate to the lien of the mortgages being foreclosed herein. SRS is made a party defendant herein solely for the purpose of foreclosing those liens, if any, against the Mortgaged Properties which accrued, or may accrue, subsequent to the lien of mortgage

being foreclose herein by virtue of such judgment liens which are or may be due or which become due to SRS from any owner of record of the Mortgaged Properties.

8. Michael Shabsels and David Shabsels (each a "Guarantor" and together, "Guarantors") have executed and delivered a conditional guaranty of the loans owing to Plaintiff and secured by liens on the Mortgaged Properties, as described in greater detail below. They are not joined as defendants because they have filed chapter 11 bankruptcy petitions, and the automatic stay of 11 U.S.C. Section 362 bars Plaintiff from joining them currently. Plaintiff reserves all rights as to Guarantors (including the right to join them as defendants should the automatic stay be modified.

9. Upon information and belief, the "John Doe" defendants constitute tenants, occupants or other persons and entities who may be in possession of, or may have possessory liens or other interests in, the Mortgaged Property and which possessory liens or other interests, if any, are subsequent and/or subordinate to the mortgages being foreclosed herein. Said defendants are named as party defendants herein for the purpose of terminating their interests. Upon information and belief, every John Doe defendant is a citizen of New York.

## JURISDICTION AND VENUE

10. This dispute arises between citizens of different states, and the amount in controversy exceeds the sum of $75,000.00, exclusive of interest and costs. Therefore, this Court has diversity-of-citizenship jurisdiction over the subject matter of this dispute pursuant to 28 U.S.C. § 1332.

11. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(3).

## THE LOAN DOCUMENTS

12. On or about March 6, 2023, Original Lender, Citi Real Estate Funding Inc. ("Original Lender") agreed to make a loan or loans (the "Loans") to Borrower, in accordance with the terms and conditions of that certain Loan Agreement (the "Loan Agreement") dated March 6, 2023. A true and correct copy of the Loan Agreements is attached hereto as **Exhibit A**.

13. Borrower executed and delivered to Original Lender that certain Promissory Note, dated March 6, 2023 ("Note") in the original principal amount of $23,500,000.00. A true and correct copy of the Note (with all allonges) is attached hereto as **Exhibit B** and its terms are expressly incorporated herein by reference and made part hereof as though fully and completely set forth herein.

14. As security for the payment of the Loan, on or about March 6, 2023, Borrower executed and delivered to Original Lender that certain (i) Mortgage dated March 6, 2023, (ii) Open-End Mortgage and Security Agreement dated March 6, 2023, and (iii) Deed of Trust and Security Agreement dated March 6, 2023 (each a "Mortgage" and collectively the "Mortgages") securing Borrower's obligations under the Note.

15. Each Mortgage was recorded in the location on the dates with the recording numbers as set forth in the following table:

| Recording Office | Date of Mortgage Recording | Recording Number |
|---|---|---|
| Saginaw County Register of Deeds (MI) | March 22, 2023 | 2023005258 |
| Windsor Town Clerk's Office (CT) | March 16, 2023 | 2023-00809 |
| County of St. Louis Recorder of Deeds (MO) | March 16, 2023 | 2023031600455 |

16. Each Mortgage encumbers that certain real property described therein (all property given as security thereunder, for each Mortgage, a "Property" and collectively the "Properties"). A true copy of each Mortgage evidencing a first priority lien is annexed hereto as **Exhibit C** and its terms are expressly incorporated herein by reference and made part hereof as though fully and completely set forth herein.

17. In addition to being a real property mortgage, each Mortgage is a "security agreement" within the meaning of the Uniform Commercial Code. A specific section of each Mortgage provides that the Mortgage is intended to be a security agreement pursuant to the Uniform Commercial Code for any of the items specified in the relevant sections of the corresponding Mortgage which, under applicable law, may be subject to a security interest pursuant to the Uniform Commercial Code, and under that section Borrower granted to Original Lender a security interest in said items.

18. As further security for the payment of the Loan, on or about March 6, 2023, Guarantors executed and delivered to Original Lender a Limited Recourse Guaranty ("Guaranty") guaranteeing the payment of certain obligations with respect to Borrower under the Loan Documents. A true copy of the Guaranty is annexed hereto as **Exhibit D** and its terms are expressly incorporated herein by reference and made part hereof as though fully and completely set forth herein.

19. As additional security for the payment of the Loan, on or about March 6, 2023, Borrower executed and delivered to Original Lender, an Assignment of Leases and Rents for each of the three Properties, securing the obligations under the Note (each an "Assignment of Rents," and together the "Assignments of Rents"). True and correct copies of the Assignments of Rents

are annexed hereto as **Exhibit E** and their terms are expressly incorporated herein by reference and made part hereof as though fully and completely set forth herein.

20. Each Assignment of Rents was recorded in the location on the dates with the recording numbers as set forth in the following table:

| Recording Office | Date of Assignment of Rents Recording | Recording Number |
|---|---|---|
| Saginaw County Register of Deeds (MI) | March 22, 2023 | 2023005259 |
| Windsor Town Clerk's Office (CT) | March 16, 2023 | 2023-00810 |
| County of St. Louis Recorder of Deeds (MO) | March 16, 2023 | 2023031600456 |

21. Pursuant to that Deposit Account Control Agreement dated March 31, 2023 by and among Borrower, Original Lender, PNC Bank, National Association ("PNC"), Borrower and Lender agreed that all Rents and other Gross Rents (as defined in the Loan Agreement) would be deposited into an account designated by and established for the benefit of Lender, and Borrower and Lender at PNC (the "DACA"). In addition, Borrower executed and delivered to Original Lender that certain Cash Management Agreement dated March 6, 2023, which provides for, *inter alia*, security interests in and control over cash proceeds of the Borrower's operations on the terms and conditions set forth therein. The DACA provides for, *inter alia*, security interests in and control over cash proceeds of the Borrower's operations on the terms and conditions set forth therein, including with respect to funds transmitted from the accounts governed by the DACA to the account under the Cash Management Agreement upon the occurrence of a Cash Management Violation (as defined in the Loan Agreement). True copies of the DACA and Cash Management Agreement are annexed hereto as **Exhibits F** and **G**, respectively, and their terms are expressly

incorporated herein by reference and made part hereof as though fully and completely set forth herein.

22. Effective as of April 19, 2023, the Loan, the Note, the Mortgages and the Assignments of Rents were assigned to Plaintiff. An allonge to the Note was executed and delivered from Original Lender to Plaintiff. A true and correct copy of that allonge to the Note by which the Note was transferred is attached to the Note as **Exhibit B** as described above.

23. Each Mortgage was assigned from Original Lender to Plaintiff by that certain: (i) Assignment of Mortgage dated April 19, 2023; (ii) Assignment of Open-End Mortgage and Security Agreement dated April 19, 2023; and (iii) Assignment of Deed of Trust and Security Agreement dated April 19, 2023 (each an "Assignment of Mortgage," and together the "Assignments of Mortgages"). True and correct copies of each Assignment of Mortgage are annexed hereto as **Exhibit H**, and their terms are expressly incorporated herein by reference and made part hereof as though fully and completely set forth herein.

24. Each Assignment of Mortgage was recorded in the location on the dates with the recording numbers as set forth in the following table:

| **Recording Office** | **Date of Assignment of Mortgage Recording** | **Recording Number** |
|---|---|---|
| Saginaw County Register of Deeds (MI) | June 7, 2023 | 2023013627 |
| Windsor Town Clerk's Office (CT) | June 7, 2023 | 2023-01665 |
| County of St. Louis Recorder of Deeds (MO) | June 7, 2023 | 2023060700435 |

25. Each Assignment of Rents was also assigned from Original Lender to Plaintiff for each of the three Properties through execution of an Assignment of Assignment of Leases and Rents dated April 19, 2023 (each an "Assignment of Assignment of Rents," and together, the

"Assignments of Assignments of Rents"). True and correct copies of each Assignment of Assignment of Rents are annexed hereto as **Exhibit I**, and their terms are expressly incorporated herein by reference and made part hereof as though fully and completely forth herein.

26. Each Assignment of Assignment of Rents was recorded in the location on the dates with the recording numbers as set forth in the following table:

| Recording Office | Date of Assignment of Assignment of Rents Recording | Recording Number |
|---|---|---|
| Saginaw County Register of Deeds (MI) | June 7, 2023 | 2023013628 |
| Windsor Town Clerk's Office (CT) | June 7, 2023 | 2023-01666 |
| County of St. Louis Recorder of Deeds (MO) | June 7, 2023 | 2023060700436 |

27. On March 7, 2023, a UCC-1 Financing Statement was filed as to Borrower with the Delaware Department of State at file number 20231723658 (the "Original State UCC"), and on June 7, 2023 a UCC-3 Assignment of Financing Statement at file number 20234100300 (the "State UCC Assignment," together with the Original State UCC, the "State UCC Documents") was filed with the Delaware Department of State, whereby the Original State UCC was assigned to Lender. True and correct copies of the State UCC Documents are attached hereto as **Exhibit J**. The State UCC Documents cover the personal property assets of the Borrower.

28. On the dates set forth in the table below, a UCC-1 Financing Statement was filed by Borrower with the local county for each Property at the file number in the table below in this paragraph (the "Original County UCC"), and on the dates set forth in the table second below a UCC-3 Assignment of Financing Statement was filed by Borrower with the local county for each Property at the file number set forth in the table second below (the "County UCC Assignment"; together with the Original County UCC, the "County UCC Documents") whereby the Original

County UCC was assigned to Lender. True and correct copies of the County UCC Documents are attached hereto as **Exhibit K**. The State UCC Documents cover the personal property assets of the Borrower.

| Recording Office | Date of County UCC Financing Statement | Recording Number |
|---|---|---|
| Saginaw County Register of Deeds (MI) | March 22, 2023 | 2023005261 |
| Windsor Town Clerk's Office (CT) | March 16, 2023 | 2023-00812 |
| County of St. Louis Recorder of Deeds (MO) | March 17, 2023 | 2023031700211 |

| Recording Office | Date of County UCC Assignment | Recording Number |
|---|---|---|
| Saginaw County Register of Deeds (MI) | June 7, 2023 | 2023013629 |
| Windsor Town Clerk's Office (CT) | June 7, 2023 | 2023-01667 |
| County of St. Louis Recorder of Deeds (MO) | June 7, 2023 | 2023060700437 |

29. The Loan, the Loan Agreement, the Note, Mortgage, the Assignment of Rents, the Guaranty, the Original Lender Assignments and all other instruments or documents evidencing or securing the obligations of Borrowers under the Notes and/or any other loan document are collectively referred to herein as the "Loan Documents."

## PROVISIONS COMMON TO THE LOAN AGREEMENT, NOTE AND MORTGAGE

30. At all times prior to default, Borrower was obligated to pay each month through the Maturity Date of March 6, 2028, on the Monthly Payment Date (the sixth (6th) calendar day of each month), the amount equal to the Monthly Debt Service Payment Amount, which is an amount

with respect to each Payment Date equal to interest which is schedule to accrue on the Loan through the end of the Interest Accrual Period in which such Payment Date occurs.

31. On the Maturity Date, all outstanding principal and all accrued and unpaid interest and all other amounts due under the Loan Agreement, the Note, the Mortgage and the other Loan Documents, including, without limitation, all interest that would accrue on the Note through and including the end of the Interest Period in which the Maturity Date occurs (even if such Interest Period extends beyond the Maturity Date) (the "Maturity Date Amount").

32. At all times prior to default, each Borrower was obligated to pay interest at a constant rate of 6.73% (the "Interest Rate") per annum on the outstanding principal amounts under the Loan Agreement. See Exs. A and B (Note at Article I and Loan Agreement at Sections 2.5 and 1.1 (the latter includes the definition of Interest Rate)).

33. The interest on the outstanding principal balance of the Note is "calculated by multiplying (a) the actual number of days elapsed in the period for which the calculation is being made by (b) a daily rate based on a three hundred sixty (360) day year (that is, the Interest Rate or the Default Rate, as then applicable, expressed as an annual rate divided by 360) by (c) the outstanding principal balance. The accrual period for calculating interest due on each Monthly Payment Date shall be the Interest Accrual Period immediately prior to such Monthly Payment Date" *See* Ex. A (Loan Agreement at Section 2.5(d)).

34. The "Default Rate" is defined in the Loan Agreement as "a rate per annum equal to the lesser of (i) the Maximum Legal Rate, or (ii) five percent (5%) above the Interest Rate." Thus, the Default Rate is 11.73% per annum. It shall be "calculated from the date the applicable Default occurred without regard to any grace or cure periods contained herein." *See* Ex. A (Loan Agreement at Sections 1.1 and 2.5(c)).

35. Each Mortgage provides in Section 8.1(g) that, upon the occurrence of an Event of Default, the mortgagee (here, Plaintiff) may apply for the appointment of a receiver, trustee, liquidator or conservator of the Property, without notice and without regard for the adequacy of the security for the Debt and without regard for the solvency of Borrower, any guarantor or indemnitor with respect to the Loan or any Person liable for the payment of the Debt any part thereof.

## GUARANTY

36. Pursuant to the Guaranty, Guarantors absolutely and unconditionally guaranteed to Plaintiff the prompt and unconditional payment of the Guaranteed Recourse Obligations of Borrower (as defined in the Guaranty), which include, among other things, liabilities, costs, losses, damages, expenses or claims suffered or incurred by Plaintiff by reason of or in connection with any of the events or circumstances described in the Loan Agreement. In addition, the Guarantor under the Guaranty is liable for all legal fees and other costs and expenses incurred by the Lender under the Note in enforcing any of the Guaranteed Recourse Obligations of Borrower.

37. As more fully explained in the below paragraph, an Event of Default has occurred on the Loan Documents.

38. In addition, the facts underlying one or more Events of Default trigger full recourse liability for the Borrower and the Guarantors.

## LEASES AND SNDAs

39. Borrower leased substantially all of its property to one or more affiliate entities (each, a "Lessee") pursuant to a 99-year lease (the "Lease"), as set forth below:

| Borrower | Lessee | Property |
|---|---|---|
| MIMOCT LLC | 3413 Tittabawassee Road Real Estate LLC, a Michigan | Valley Center Property |

| | | |
|---|---|---|
| | limited liability company, and 3413 Tittabawassee Road Leasing LLC, a Michigan limited liability company | |
| MIMOCT LLC | 200 Great Pond Drive Real Estate LLC, a Connecticut limited liability company, and 200 Great Pond Drive Leasing LLC, a Connecticut limited liability company | Great Pond Property |
| MIMOCT LLC | 11200 West Florissant Avenue Leasing LLC, a Missouri limited liability company, and 11200 West Florissant Avenue Realty LLC, a Missouri limited liability company | Clocktower Property |

40. Borrower, Lessee and a corresponding lender to whom each Lessee has mortgaged its ground lease interest under the Lease (each, a "Ground Lease Mortgagee") is party with Plaintiff as successor in interest to Original Lender to a Ground Lease Recognition, Subordination, Non-Disturbance, Estoppel and Attornment Agreement ("SNDA"). True and correct copies of each SNDA are annexed hereto as **Exhibit L**.

41. In summary, among other provisions each SNDA (a) prohibits modification of the corresponding Lease without Plaintiff's consent and (b) governs the terms and conditions by which Ground Lease Mortgagee can cure defaults under, and maintain in existence, the Lease upon default.

42. Each Lessee has filed for Chapter 11 bankruptcy relief (the "Bankruptcy Lessees"). Each Bankruptcy Lessee is seeking Bankruptcy Court authorization to use cash collateral in its Ground Lease Mortgagee but is not seeking at present to use cash collateral to pay to Borrower the rent payments owing under the Lease or to pay the real estate taxes and insurance premiums

which each Lessee is obligated to pay under its Lease (such rent, taxes and insurance, the "Required Lease Payments").

43. Borrower has an obligation under the Loan Documents and under the SNDA not to permit any change to any Lease and to enforce each Lease breach.

44. Borrower has not filed a notice of appearance in any bankruptcy case for any Bankruptcy Lessee. Borrower has not taken any steps to enforce either the Lease or otherwise exercise such rights as landlord under the Lease which may be exercised notwithstanding the bankruptcy automatic stay.

45. For example, each Bankruptcy Lessee is required post-bankruptcy filing to pay its Required Lease Payments. Failure to do so can create grounds for stay relief to permit the Borrower to terminate the corresponding Lease (subject to cure rights of the Ground Lease Mortgagee). In addition, Borrower has the right to compel the Bankruptcy Lessee to assume or reject the Lease in full without modification. Borrower has not taken any step to preserve such right despite applications by Bankruptcy Lessees to use cash collateral without paying the Required Lease Payments.

46. Upon information and belief, the making of the Required Lease Payments each month results in Borrower having sufficient funds to pay the Note payments required prior to acceleration with a surplus remaining in Borrower's name but subject to a first priority lien in favor of Plaintiff.

47. In short, Borrower is required to protect and enforce its rights under the Lease against the corresponding Bankruptcy Lessee(s) but no Borrower is taking any steps to do so.

48. Borrower is not permitted to impair Plaintiff's rights through affiliate atrophy as currently being practiced by Borrower.

## DEFAULTS UNDER THE LOAN DOCUMENTS

49. On or about June 4, 2026, Guarantors Michael Shabsels and David Shabsels filed for Chapter 11 bankruptcy in the United States Bankruptcy Court for the District of New Jersey. Plaintiff provided written notice of Borrower's default to the Borrower and Guarantors by letter dated June 16, 2026 (the "Default Letter"). A true and correct copy of the Default Letter is annexed hereto as **Exhibit M**.

50. Borrower has also failed to pay $1,485,873.44 in back property taxes, including penalty fees and interest, due on the Mortgaged Property commonly known as 11200 West Florissant Avenue, 11204 West Florissant Avenue, 11208 West Florissant Avenue, and 11298 West Florissant Avenue, all in Florissant, Missouri ("Clocktower"), since 2024, constituting an additional Event of Default. True and correct copies of the tax bills for Clocktower from 2024 and 2025 are annexed hereto as **Exhibit N**.

51. The Plaintiff provided written notice of Borrower's additional default to the Borrower and Guarantors by letter dated June 29, 2026 (the "June 29, 2026 Default Letter"). A true and correct copy of the June 29, 2026 Default Letter is annexed hereto as **Exhibit O**.

52. The Plaintiff provided written notice of acceleration of the Loan by letter dated July 7, 2026 (the "July 7, 2026 Acceleration Letter"). A true and correct copy of the July 7, 2026 Acceleration Letter is annexed hereto as **Exhibit P**.

53. By reason of the foregoing, as of July 8, 2026, and assuming no further payment by Borrower or anyone else on account of the Loan, there is justly due and owing to Plaintiff, upon the Mortgages, the outstanding principal balance of $23,500,000.00, together with accrued and unpaid interest thereon, at the Default Interest Rate from no later than, and after, the first tax payment failure noted above, and all other charges as more fully provided in the Loan Documents,

which sums are due and owing in addition to any usual costs and allowance to which Plaintiff may be entitled to and awarded under any law or statute applicable to this action.

54. In order to protect its security interest, Plaintiff may be compelled to pay during the pendency of this action, among other things, taxes, assessments, water rates, insurance premiums and other charges affecting the Mortgaged Properties, and Plaintiff requests that any sums thus paid by it for said purposes (together with interest thereon) be added to the sum otherwise due and be deeded secured by each Mortgage and be adjudged a valid lien on each Mortgaged Property.

55. Upon information and belief, all of the defendants named in this action have, or claim to have, some claim to, interest in or lien upon one of the Mortgaged Properties or some part thereof, which claim, interest or lien, if any, has accrued subsequent to the Mortgages and to the liens of Plaintiff and is subject and subordinate to the liens of Plaintiff.

56. Upon information and belief, no persons or entities other than those described herein have, may have, or claim to have, any interest in and lien upon the Mortgaged Properties.

**COUNT I**

**(Foreclosure of the Mortgages)**

57. Plaintiff repeats and realleges that allegations set forth in the paragraphs above with the same force and effect as if set forth fully herein.

58. Plaintiff and Borrower are parties to the Loan Documents, under which Borrower has agreed to perform various obligations, including payment of the indebtedness pursuant to the terms of the Note. Moreover, Events of Default under the Note and each Mortgage have occurred by reason of, without limitation, Guarantors Michael Shabsels and David Shabsels filing chapter 11 petitions for bankruptcy relief and the tax payment failures noted above. Interest at the Default Rate has accrued since the first Event of Default and Borrower has not paid such interest at the

Default Rate. In addition, on account of such Events of Default, Plaintiff has accelerated the indebtedness and Borrower has failed to pay the indebtedness to Plaintiff in accordance with the terms of the Loan Documents.

59. Borrower's failure to pay such indebtedness constitutes a breach of the Loan Documents. Specifically, MIMOCT LLC's failure to pay such indebtedness constitutes a breach of its Loan Documents.

60. One or more of the Mortgaged Properties are located in jurisdictions which permit foreclosure of the corresponding Mortgage by power of sale or other non-judicial procedure. Plaintiff reserves all rights to foreclose any such Mortgage by power of sale or other non-judicial procedure while pursuing its rights and remedies as pleaded in this action.

61. As a result, Plaintiff is entitled to a judgment barring and forever foreclosing Borrower and other defendants, and all persons claiming by, through or under all or any of them, any and all mechanic's lien holders, all subsequent and subordinate lien and/or judgment holders, and every person or entity whose right, title, conveyance or encumbrance is recorded subsequent to the filing of a notice of pendency of this action of all right, title, interest, claim, lien and equity of redemption in and to the Mortgaged Properties and in and to the fixtures and articles of personalty upon which the Mortgage are liens attached to or used in connection with said premises.

**COUNT II**

**(Foreclosure on UCC Security Interests)**

62. Plaintiff re-alleges and incorporates by reference, as if set forth fully herein, the allegations contained in the foregoing paragraphs.

63. Plaintiff and Borrower are parties to the Loan Documents, under which Borrower has agreed to perform various obligations, including payment of the indebtedness pursuant to the

terms of the Note. Borrower continues to be in default under the Loan Documents, including but not limited to, the defaults set forth above.

64. Pursuant to Section 9-601(1)(a) of the Uniform Commercial Code, Plaintiff has the right to foreclose upon all personal property encumbered by any security interest in favor of the Lender under the Loan Documents (the "Collateral") by reason of the default described above.

**COUNT III**

**(Appointment of a Receiver)**

65. Plaintiff re-alleges and incorporates by reference, as if set forth fully herein, the allegations contained in the foregoing paragraphs.

66. The real and personal property of Borrower in which Plaintiff holds a lien or security interest (the "Assets") are the sole assets of the Borrower.

67. The failure to make the payments due under the Loan Documents are events of default under the Loan Documents, including the Note and Assignments of Rents.

68. The Loan Documents expressly allow Plaintiff to seek the appointment of a receiver to take possession of and hold the Assets upon the occurrence of an event of default and in the discretion of this Court. Borrower consented to the appointment of a receiver under the Loan Documents.

69. Borrower's licenses to collect leases and rents under the Assignments of Rents have terminated on account of the breach of the Loan Documents

70. In addition, Borrower has leased substantially all of its property to affiliates, as set forth above.

71. As set forth above, Borrower is required to enforce the Lease against each Bankruptcy Lessee but is not doing so. Appointment of a receiver for the Properties is necessary

so the receiver can act in place of Borrower with respect to the Leases and enforcing Borrower's rights thereunder and enabling Plaintiff to receive the benefits of the SNDAs.

72. For these reasons, in accordance with Rule 66 of the Federal Rules of Civil Procedure, Plaintiff is entitled to the appointment of a receiver to take immediate possession of and hold, subject to the discretion of this Court, the Defendants' Assets.

## PRAYER FOR RELIEF

Plaintiff requests that the Court grant the relief requested above and such other and further relief, both at law and in equity, to which it may be justly entitled. Specifically, Plaintiff requests that the Court:

a. bar and forever foreclose MIMOCT LLC and all persons claiming by, through or under all or any of them, and every person or entity whose right, title, conveyance or encumbrance is recorded subsequent to the filing of a notice of pendency of this action in the, of all right, title, interest, claim, lien and equity of redemption in and to the property subject to the Note and in and to the fixtures and articles of personalty upon which the liens attached to or used in connection with said premises;

b. decree that each Property be sold as one parcel pursuant to each Mortgage, along with the fixtures and articles of personalty, and that the monies arising from such sales be brought into Court;

c. direct MIMOCT LLC to pay Plaintiff the amounts due upon its Loan Documents, with interest thereon to the time of such payment, together with the expenses of the sale, the costs, allowances and disbursements of this action, the Plaintiff's attorneys' fees, other charges, any monies advanced or paid to protect its liens, and the taxes, assessments, water charges and sewer rents, premiums for insurance, repairs to the property subject to MIMOCT LLC's

Security Instruments and all other charges which may have been made by the Lender to protect the security afforded under MIMOCT LLC's Security Instruments and the lien thereon to be paid, with interest upon said amounts from the dates of the respective payments and advances thereof, so far as the amounts of such monies properly applicable thereto will pay the same;

d. direct MIMOCT LLC to pay Plaintiff all rents as they become due and payable;

e. direct the referee (or other officer) making such sale to pay from the proceeds thereof all taxes, assessments, water rates, sewer rents and other charges which are liens on the property sold; and

f. adjudge that the collateral (that is not real property) subject to the Loan Documents be sold together with the real property subject to the Security Instrument at a single public sale conducted by the sheriff or referee to satisfy the amounts due to Plaintiff;

g. bar and foreclose MIMOCT LLC of all equity of redemption in and to the aforesaid collaterals;

h. awarding possession of each of the Mortgaged Properties to the successful purchase at the corresponding judicial sale of each of the Mortgaged Properties;

i. appoint a receiver to take possession and control of and hold each Defendant's Assets;

j. order Borrower and its agents charged with operating and/or managing the Mortgaged Properties to (i) promptly render an accounting for all rents and other income from the Mortgaged Properties from and after the date of this complaint; and (ii) provide all such information and reports concerning the ownership, use, operation, management, repair, maintenance and leasing of the Mortgaged Properties as may be required by this Court to provide

the receiver appointed by this Court with the information necessary to perform its obligations as receiver of the Properties;

k. direct the receiver to segregate, preserve, protect, collect and account for, and manage, operate, lease, maintain and preserve, each Defendant's Assets;

l. compel the Defendants to promptly pay over to the receiver and cause the Defendants' affiliates (i) all deposits by tenants of all rents, revenues and other income from the Mortgaged Properties, and all other funds which are Assets in their possession or control; and (ii) all such deposits, rents, revenue and other income from the Mortgaged Properties and other funds which are Assets that are received by any of them from and after the appointment of the receiver;

m. direct the receiver to pay to Plaintiff on a monthly basis any income and revenue from the Assets in excess of that amount reasonably required to manage, operate, lease, maintain and preserve the Mortgaged Properties and other Assets;

n. authorize Plaintiff, at its sole election, to (i) make such advances to the receiver for the benefit and account of the Defendants under the Loan Documents as may be necessary from time to time, in the exercise of Plaintiff's sole discretion; and (ii) pay costs and expenses reasonably required to manage, operate, lease, maintain and preserve the Defendants' Mortgaged Properties to the extent that rents, income and other revenue from the Defendants' Assets are insufficient to pay such costs and expenses, all without Plaintiff becoming a mortgagee in possession or incurring any other liability to the Defendants;

o. permit any such advances made by the Plaintiff pursuant to the foregoing paragraph f of this prayer to be additional indebtedness which will be owed to the Lender under the Note and secured by the other Loan Documents;

p. authorize the receiver to appear in any Bankruptcy Lessee bankruptcy case as the representative of the Borrower with respect to the Leases, the SNDAs and Borrower's rights thereunder;

q. authorize the receiver, upon request by Plaintiff, to list or otherwise advertise for sale and to solicit offers to purchase the Mortgaged Properties and other Assets and to sell the Mortgaged Properties and other Assets, on such terms as are acceptable and approved in writing prior to such sale by the Lender, by way of public or private sale or other disposition in accordance with the applicable provisions of 28 U.S.C. § 2001 and 2004, free and clear of all security interests, liens, claims and other interests with all valid security interests and liens to attach to the proceeds of such sale(s);

r. tax all costs of this action to the Defendants; and

s. award such other and further relief as is just and proper.

Dated: New York, New York
July 8, 2026

**ASHURST PERKINS COIE US LLP**

By: /s/ *Gary F. Eisenberg*
Gary F. Eisenberg, Esq.

1155 Avenue of the Americas
22nd Floor
New York, NY 10036
212.262.6900
*Attorney for Plaintiff*

**VERIFICATION**

Margaret Honigberg, being duly sworn, deposes and says:

1. I am a Vice President with CWCapital Asset Management LLC ("CWCapital"), the designated special servicer for COMPUTERSHARE TRUST COMPANY, N.A., AS TRUSTEE FOR THE BENEFIT OF THE REGISTERED HOLDERS OF BANK5 2023-5YR1, COMMERCIAL MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2023-5YR1, Plaintiff in this action.

2. I make this verification because CWCapital is a limited liability company and I am authorized as a Vice President by CWCapital as special servicer to execute this Complaint on Plaintiff's behalf.

3. I have read the foregoing Verified Complaint and know the contents thereof. The same is true to my own knowledge, except as to the matters therein stated to be alleged on information and belief, and as to those matters, I believe them to be true.

4. I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

July 8, 2026
Washington, DC

Margaret Honigberg

# SCHEDULE "A"

## Legal Description (4 pages)

**MICHIGAN:**

Commonly known as: 3343 Tittabawassee Road and 3175 Westbay Drive, Saginaw Michigan

Tax Parcel Id. No.: 23-12-4-03-1054-000; 23-12-4-03-1054-003; and 23-12-4-03-1054-005

**EXHIBIT A**

The Land referred to herein below is situated in the Township of Saginaw, County of Saginaw, State of Michigan, and is described as follows:

PARCEL 1 (West Valley):
That part of the WESTBAY PLAZA, according to the plat thereof recorded in Liber 22, Pages 37, 38 and 39 of Plats, Saginaw County Records, also that part of the North fractional 1/2 of the Northeast fractional 1/4 of Section 3, Town 12 North, Range 4 East, Saginaw Township, Saginaw County, Michigan, described as: Commencing at the Northeast corner of Section 3, Town 12 North, Range 4 East; thence North 89 degrees 09 minutes 16 seconds West 1361.97 feet along the North line of Section 3; thence South 00 degrees 12 minutes 12 seconds West 33.00 feet parallel with the East line of Section 3 to the point of beginning of the following described parcel, being on the South right of way line of Tittabawassee Road; thence South 00 degrees 12 minutes 12 seconds West 27.00 feet to the Northwest corner of Outlot A of WESTBAY PLAZA; thence South 89 degrees 09 minutes 16 seconds East 2.01 feet along the North line of Outlot A to the West right of way of Fortune Boulevard; thence South 00 degrees 12 minutes 12 seconds West 1369.65 feet along the West right of way of Fortune Boulevard to the Southeast corner of Lot 12, WESTBAY PLAZA and the South line of the North fractional 1/2 of the Northeast fractional 1/4 of Section 3; thence South 89 degrees 54 minutes 58 seconds West 1248.54 feet along the South line of the North fractional 1/2 of the Northeast fractional 1/4 of Section 3 to the Southeast corner of Lot 70, URBANA PARK, according to the plat thereof recorded in Liber 8, Page 50 of Plats, Saginaw County Records; thence North 00 degrees 12 minutes 47 seconds East 1416.92 feet (recorded as North 00 degrees 00 minutes 00 seconds East 1417.36 feet) along the North-South 1/4 line of Section 3 and the East line of Urbana Park to the South right of way line of Tittabawassee Road; thence South 89 degrees 09 minutes 16 seconds East 509.35 feet along the South right of way line of Tittabawassee Road; thence North 00 degrees 12 minutes 12 seconds East 33.00 feet to the North line of Section 3; thence South 89 degrees 09 minutes 16 seconds East 10.00 feet along the North line of Section 3; thence South 00 degrees 12 minutes 12 seconds West 33.00 feet to the South right of way line of Tittabawassee Road; thence South 89 degrees 09 minutes 16 seconds East 727.00 feet along the South right of way line of Tittabawassee Road to the point of beginning.

EXCEPTING Outlot A of WESTBAY PLAZA, according to the plat thereof recorded in Liber 22, Pages 37, 38 and 39 of Plats, Saginaw County Records.

ALSO EXCEPTING a parcel of land in the North fractional 1/2 of the Northeast fractional 1/4 of Section 3, Town 12 North, Range 4 East, Saginaw Township, Saginaw County, Michigan, described as: Commencing at the Northeast corner of Section 3, Town 12 North, Range 4 East; thence North 89 degrees 09 minutes 16 seconds West 1361.97 feet along the North line of Section 3; thence South 00 degrees 12 minutes 12 seconds West 33.00 feet parallel with the East line of Section 3 to the point of beginning of the following described parcel, said point being on the South right of way line of Tittabawassee Road; thence continuing South 00 degrees 12 minutes 12 seconds West (measured East) 200.00 feet along the West line of Outlot A, WESTBAY PLAZA and its northerly extension to the North line of Lot 8, Westbay Plaza; thence North 89 degrees 09 minutes 16 seconds West 118.30 feet along the North line of Lot 8, Westbay Plaza; thence North 00 degrees 12 minutes 12 seconds West (measured East) 200.00 feet to the South line of Tittabawassee Road; thence South 89 degrees 09 minutes 16 seconds East 118.30 feet along the South line of Tittabawassee Road to the point of beginning.

EASEMENT PARCEL:
Together with the benefits afforded by (i) Sign Easement Agreement recorded in Liber 2583, Page 861, (ii) Sign License Agreement recorded in Liber 2583, Page 869, and (iii) Non-Exclusive Easement for ingress and egress, both vehicular and pedestrian, parking and utilities, including, but not limited to sanitary sewers, storm drains, cable TV, water, gas, electrical, telephone and communication lines as set forth in instrument recorded in Liber 1968, Page 1405, as amended in instrument recorded in Liber 1980, Page 766, Saginaw County Records.

A parcel of land in the North 1/2 of the Northeast 1/4 of fractional Section 3, Town 12 North, Range 4 East, Saginaw Township, Saginaw County, Michigan comprising two parcels listed following as Parcel 2-A (East Valley) and Parcel 2-B (Private Service Drive) described as:

PARCEL 2-A (East Valley):
A parcel of land in the North 1/2 of the Northeast 1/4 of fractional Section 3, Town 12 North, Range 4 East, Saginaw Township, Saginaw County, Michigan described as:

A parcel of land containing entire Lots 5, 13, 14, 15, 16, 17 and part of Lots 2, 3, 4 and 6, WESTBAY PLAZA, as recorded in Liber 22 of Plats, Pages 37 through 39, inclusive, Saginaw County Records, a part of the North 1/2 of the Northeast 1/4 of fractional Section 3, Town 12 North, Range 4 East, Saginaw Township, Saginaw County, Michigan, being described as: Commencing at the Southeast corner of the North 1/2 of the Northeast 1/4 of said fractional Section 3; thence South 89 degrees 54 minutes 58 seconds West, 561.92 feet along the North 1/8 line of the Southeast corner of said Westbay Plaza and the point of beginning; thence continuing South 89 degrees 54 minutes 58 seconds West, 711.97 feet along the North 1/8 line and the South line of said WESTBAY PLAZA to the East line of Fortune Boulevard; thence North 00 degrees 12 minutes 12 seconds East, 925.72 feet along the East line of Fortune Boulevard to the South line of proposed Westbay Drive; thence South 89 degrees 47 minutes 48 seconds E, 663.00 feet parallel with the North Section line and along the South line of proposed Westbay Drive; thence South 00 degrees 12 minutes 12 seconds West, 292.70 feet parallel with the East Section line and along the West line of proposed Westbay Drive to a tangent curve to the left; thence along said curve, being the West line of proposed Westbay Drive, with a radius of 173.00 feet through a central angle of 32 degrees 03 minutes 17 seconds an arc distance of 96.79 feet, said curve being subtended by a chord bearing South 15 degrees 49 minutes 26 seconds East, 95.53 feet to the North line of existing Westbay Drive and a compound curve; thence along said compound curve with a radius of 173.00 feet through a central angle of 12 degrees 08 minutes 07 seconds an arc distance of 36.54 feet, said curve being subtended by a chord bearing South 37 degrees 55 minutes 07 seconds East, 36.57 feet to a point of non-tangency; thence South 00 degrees 12 minutes 12 seconds West, 41.10 feet to the Northeast corner of Lot 17 of WESTBAY PLAZA; thence South 00 degrees 12 minutes 12 seconds West, 467.76 feet along the East line of said Lot 17 to the Southeast corner of said WESTBAY PLAZA and the point of beginning.

EASEMENT PARCEL:
Together with the beneficial easements granted in Monument Sign Easement Agreement recorded in Liber 2003, Page 378, Saginaw County Records.

PARCEL 2-B (Private Service Drive):
A parcel of land in the North 1/2 of the Northeast 1/4 of fractional Section 3, Town 12 North, Range 4 East, Saginaw Township, Saginaw County, Michigan, being described as: Commencing at the Northeast corner of said Section; thence North 89 degrees 09 minutes 16 seconds West, 448.70 feet along the North Section line; thence South 00 degrees 12 minutes 12 seconds West, 60.00 feet parallel with the East Section line to the South line of Tittabawassee Road and the point of beginning; thence continuing South 00 degrees 12 minutes 12 seconds West, 369.70 feet parallel with the East Section line; thence North 89 degrees 09 minutes 16 seconds West, 96.20 feet parallel with the North Section line to the Northeast corner of Westbay Drive; thence South 00 degrees 12 minutes 12 seconds West, 52.00 feet along the East line of Westbay Drive; South 89 degrees 09 minutes 16 seconds East, 140.20 feet parallel with the North Section line; thence North 00 degrees 12 minutes 12 seconds East, 321.34 feet parallel with the East Section line to a tangent curve to the right; thence along said curve with a radius of 90.00 feet through a central angle of 21 degrees 05 minutes 03 seconds, an arc distance of 33.12 feet, said curve being subtended by a chord bearing North 10 degrees 44 minutes 44 seconds E, 32.93 feet to reverse curve; thence along said curve with a radius of 134.00 feet through a central angle of 21 degrees 05 minutes 03 seconds an arc distance of 49.31 feet, said curve being subtended by a chord bearing North 10 degrees 44 minutes 44 seconds East, 49.03 feet to a point of tangency; thence North 00 degrees 12 minutes 12 seconds East, 19.61 feet parallel with the East Section line to the South line of Tittabawassee Road; thence North 89 degrees 09 minutes 16 seconds W, 59.00 feet along the South line of Tittabawassee Road to the point of beginning.

**CONNECTICUT:**

The land referred to herein below is situated in the County of , State of Connecticut, and described as follows:

PARCEL I:

ALL THAT CERTAIN piece or parcel of land, together with the buildings and improvements thereon, situated in the Town of Windsor, County of Hartford, and State of Connecticut, bounded and described as follows:

Beginning at a point in the south street line of Prospect Hill Road, said point being the northwest corner of subject parcel and being N 78° 27' 45" E along said street line, a distance of 76.51 feet from a merestone; thence N 78° 27' 45", a distance of 305.91 feet to a merestone; thence along a curve to the left a distance of 261.74 feet, said curve having a radius of 1580.00 feet and a central angle of 9° 29' 30", to a merestone; thence N 68° 58' 15" E, a distance of 367.28 feet to a point, the three preceding lines being the south street line of Prospect Hill Road; thence S 18° 09' 37" E, along the west property line of 50 Great Pond Drive, a distance of 775.54 feet to a point in the north street line of Great Pond Drive; thence along a curve to the right a distance of 284.61 feet, said curve having a radius of 2858.00 feet and a central angle of 5° 42' 21"; thence S 70° 20' 46" W, a distance of 78.02 feet to a point; thence along a curve to the right a distance of 78.52 feet, said curve having a radius of 50.00 feet and a central angle of 90° 00' 00", to a point; thence N 19° 39' 14" W, a distance of 78.00 feet to a point; the four preceding lines being in the north street line of Great Pond Drive; thence S 70° 20' 46" W, along the north street line of Great Pond Drive and along property now or formerly of Combustion Engineering, Inc, partly by each, a distance of 440.00 feet to a point; thence along a curve to the left a distance of 96.45 feet, said curve having a radius of 700.00 feet and a central angle of 7° 53' 40", to a point; thence N 27° 32' 54" W, a distance of 232.85 feet to a point; thence N 11° 32' 15" W, a distance of 492.10 feet to the point of beginning, the three preceding lines being along property now or formerly of Combustion Engineering, Inc.

Containing 15.97 acres.

PARCEL II:

ALL THAT CERTAIN piece or parcel of land, together with the buildings and improvements thereon, situated in the Town of Windsor, County of Hartford, and State of Connecticut, bounded and described as follows:

Beginning at a point in the south street line of Prospect Hill Road, said point marking the west intersection of said street with Great Pond Drive, and being N 74° 14' 15" E, a distance of 60.04 feet from a merestone; thence N 74° 14' 15" E, in the south street line of Prospect Hill Road, a distance of 144.00 feet to a point; thence along a curve to the left a distance of 47.04 feet, said curve having a radius of 30.00 feet and a central angle of 89° 49' 57"; thence S 15° 35' 42" E, a distance of 119.77 feet to a point; thence along a curve to the right a distance of 25.32 feet, said curve having a radius of 160.00 feet and a central angle of 09° 04' 07", to a point; thence along a curve to the left, a distance of 25.32 feet, said curve having a radius of 160.00 feet and a central angle of 09° 04' 07" to a point; thence along a curve to the right, a distance of 792.93 feet, said curve having a radius of 638.00 feet and a central angle of 71° 12' 34", to a point; thence along a curve to the right, a distance of 755.40 feet, said curve having a radius of 2938.00 feet and a central angle of 14° 43' 54", to a point; thence S 70° 20' 46" W, a distance of 88.02 feet to a point; thence along a curve to the left, a distance of 78.54 feet, said curve having a radius of 50.00 feet and a central angle of 90° 00' 00", to a point; thence S 19° 39' 14" E, a distance of 42.00 feet to a point; thence along a curve to the right, a distance of 141.37 feet, said curve having a radius of 90.00 feet and a central angle of 90° 00' 00", to a point; thence N 19° 39' 14" W, a distance of 170.00 feet to a point; thence along a curve to the left, a distance of 78.54 feet, said curve having a radius of 50.00 feet and a central angle of 90° 00' 00" to a point; thence N 19° 39' 14" a distance of 80.00 feet to a point in the north street line of Great Pond Drive; the fifteen preceding lines being in the east, south and west street lines of Great Pond Drive and being along property now or formerly of Combustion Engineering, Inc.; thence N 70° 20' 46" E a distance of 300.00 feet to a point; thence S 19° 39' 14" E a distance of 78.00 feet to a point; thence along a curve to the left a distance of 78.54 feet, said curve having a radius of 50.00 feet and a central angle of 90° 00' 00" to a point; thence N 70° 20' 46" E 78.02 feet to a point; the four preceding lines being in the north street line of Great Pond Drive and along property of 200 Great Pond Drive; thence along a curve to the left a distance of 734.83 feet, in the north street line of Great Pond Drive along property

200 and 50 Great Pond Drive, partly by each; said curve having a radius of 2858.00 feet and a central angle of 14° 43' 54", to a point; thence along a curve to the left a distance of 693.50 feet, said curve having a radius of 558.00 feet and a central angle of 71° 12' 34", to a point; thence N 15° 35' 42" W a distance of 169.79 feet to a point; thence along a curve to the left a distance of 47.21 feet, said curve having a radius of 30.00 feet and a central angle of 90° 10' 03" to the point of beginning, the three preceding lines being in the north and west street lines of Great Pond Drive and along property of 50 Great Pond Drive.

Containing 5.6 acres.

LESS AND EXCEPTING THEREFROM that portion of the premises conveyed to the Town of Windsor by Warranty Deed dated July 2, 1993 and recorded in Volume 1001 at Page 232 of the Windsor Land Records.

**MISSOURI:**

The Land referred to herein below is situated in the County of St. Louis, State of Missouri, and is described as follows:

Tract 1:

Lots One (1), Three (3) and Four (4), DIERBERG'S CLOCKTOWER PLACE, a subdivision in Florissant, St. Louis County, Missouri as per plat thereof recorded in Plat Book 263, Page 37 of the St. Louis County, Missouri, Records, as corrected by Correction Affidavit recorded in Book 8462, Page 2177.

Tract 2:

Non-exclusive easements for ingress, egress and utilities, as set forth in Reciprocal Easement dated May 26, 1987 and recorded May 27, 1987 in Book 8131, Page 1439.

# SCHEDULE "B"

## Inferior Liens Being Foreclosed

The Metropolitan St. Louis Sewer District
2350 Market Street
St. Louis, MO 63103
June 23, 2025
$2,528.40

SRS Distribution
7440 State Hwy 121
McKinney, TX 75070
June 2, 2026
$288,439.84